# IN THE SUPREME COURT OF TEXAS

No. 17-0835

DALLAS SYMPHONY ASSOCIATION, INC.
A/K/A DALLAS SYMPHONY ORCHESTRA, PETITIONER,

v.

JOSE REYES, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued January 10, 2019**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Generally, Texas law permits an appeal from "an interlocutory order . . . that . . . denies a motion for summary judgment . . . based in whole or in part upon a claim against or defense by a member of the . . . media, acting in such capacity, or a person [quoted] by the . . . media," involving federal or state constitutional guarantees of freedom of speech or of the press.[1] A divided court of appeals held that "order" refers only to the ruling on the constitutional grounds stated in the motion.[2] We hold that "order" means the ruling on the entire motion, including nonconstitutional grounds, and that the defendants were entitled to summary judgment on all claims against them. We affirm

---

[1] TEX. CIV. PRAC. & REM. CODE § 51.014(a)(6).

[2] ___ S.W.3d ___.

the court of appeals' judgment in part, reverse in part, and remand the case to the trial court.

## I

The Dallas Symphony Orchestra[3] relies for support on a large number of donors, sponsors, fundraisers, benefactors, committees, organizations, and volunteers. Jose Reyes, a low-level customer-call-center employee of the Bank of America, participated in Orchestra events as a volunteer and small donor for some ten years. But he acquired a reputation for crashing events uninvited, photobombing, and speaking to the media purportedly on the Orchestra's behalf but without authorization. Other supporters complained, and the Orchestra repeatedly requested him to stop. Finally, with approval of the Orchestra's president and chief executive officer, Jonathan Martin, Reyes was told that he was no longer welcome as a volunteer. At Martin's direction, the Orchestra's contact at the Bank was informed of the decision.

Early the next day, at 3:21 a.m., Reyes sent Martin a lengthy email from his Bank computer, protesting that he was "shocked and highly offended" at the way he had been treated. "As you know," he wrote, "we are one of your major donors that supports the [Orchestra]". "You don't bite the hand that feeds you," Reyes continued, "and this information is being duly noted by the Bank, which is not impressed. This is not going over very well with us right now." "I won't go quietly," he warned. Martin had the email forwarded to the Orchestra's Bank contact. The contact responded that Reyes did not speak for the Bank and that further communications from Reyes should be forwarded to her. The contact notified Reyes' superior of all that had transpired, he referred the matter to the Bank's human resources department, and Reyes was placed on administrative leave.

---

[3] This is the business name of the Dallas Symphony Association, Inc.

Several days later, the Bank terminated Reyes' employment, citing prior performance and violations of the Bank's social media policy, code of ethics, and conflict of interest policy.

The Orchestra issued this media advisory:

> The Dallas Symphony Orchestra would like to inform its sponsors and media partners that as of [the previous day], Jose Reyes is no longer affiliated as a volunteer with the Dallas Symphony Orchestra or with any of its volunteer organizations and/or organizing committees. Thank you.

After receiving the advisory, D Magazine[4] investigated the matter, interviewed Reyes, and published an article entitled "*The Talented Mr. Reyes: How a Man of Meager Means and a Mysterious Past Duped Dallas Society*". "It seemed strange that so many people on the party circuit knew him," the article observed, " but none could say where he'd come from or what, precisely, he did for a living." Reyes "told people he worked 'in marketing,'" the article stated, when he actually "worked in a call center" and bought inexpensive event tickets but "portrayed [himself] as having a grander role in these events than he actually had." The article called Reyes a "social butterfly", noting that "[p]eople griped that he crashed parties, blustered his way into photos, and misrepresented his role with charities." After the Orchestra "fired Reyes as a volunteer", the article concluded, the Bank fired him as an employee.

Reyes sued D Magazine and the Orchestra alleging various tort claims. D Magazine and the Orchestra each moved for summary judgment on all of Reyes' claims. D Magazine argued that many of the statements in its article are constitutionally protected. The trial court issued an order granting

---

[4] This is the business name used by D Magazine Partners, L.P.

D Magazine's motion on some claims[5] but denying it on Reyes' claims for defamation per quod, conspiracy to defame, negligence, and gross negligence. In a separate order, the trial court also granted the Orchestra's motion in part[6] but denied it on Reyes' claims for conspiracy to defame and tortious interference with employment. D Magazine and the Orchestra each appealed the interlocutory order partially denying its motion for summary judgment.

Their appeals were based on Section 51.014(a)(6), which allows an interlocutory appeal by "a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media".[7] Unquestionably, D Magazine is in the first category, and the Orchestra is in the second. The appeal must involve a claim or defense "arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or [Texas Civil Practice and Remedies Code] Chapter 73".[8] Some of the claims and defenses in the case arise under libel law, covered by Chapter 73, and some of D Magazine's and the Orchestra's defenses arise under constitutional guarantees of free speech and a free press. Thus, it is undisputed that Section

---

[5] The trial court granted the motion on Reyes' claims for defamation per se, intentional infliction of emotional distress, and tortious interference with prospective business relationships.

[6] The trial court granted the motion on Reyes' claims for defamation per quod, defamation per se, negligence, intentional infliction of emotional distress, and tortious interference with prospective business relationships.

[7] TEX. CIV. PRAC. & REM. CODE § 51.014(a)(6) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73 [libel]".).

[8] *Id.*

51.014(a)(6) covers D Magazine, the Orchestra, and their defenses to some of Reyes' claims. But Reyes' claim of tortious interference against the Orchestra, and the Orchestra's defenses, do not arise under such constitutional guarantees or libel law.

The statute requires that the appeal be from "an interlocutory order of a district court . . . that denies a motion for summary judgment that is based in whole or in part" on such a defense.[9] The Orchestra argues that the statute covers its defenses to Reyes' tortious interference claims because they were a part of the basis for its motion for summary judgment that the district court denied with its order. Without analyzing the statutory text, the court of appeals disagreed. "We conclude," it wrote, that "the purpose of this section is to allow immediate appeal of claims involving free speech or press issues that are directed at the press or those the press rely upon as sources of information. . . . Our review . . . is limited to the denial of summary judgment on claims or defenses implicating rights of free speech or free press."[10]

The court reversed the denial of D Magazine's motion for summary judgment, and part of the denial of the Orchestra's motion. The court held that Reyes' defamation claims failed because the statements in the article of which he complained were either true or not defamatory, and that absent a viable defamation claim, there could be no claim of conspiracy to defame.[11] The court also held that Reyes' negligence claims failed because they were based entirely on the article and

---

[9] *Id.*

[10] ___ S.W.3d at ___, ___.

[11] *Id.* at ___.

5

therefore should be treated as defamation claims.[12] But the court held that it had no jurisdiction under Section 51.014(a)(6) to consider the Orchestra's argument that its motion for summary judgment on Reyes' tortious interference claim should not have been denied.[13]

On this last issue, six justices of the 13-member court dissented from the denial of the Orchestra's motion for rehearing en banc.[14] They argued that "the plain meaning of section 51.014(a)(6)"—specifically, allowing an appeal from an order denying a motion "based in whole or in part" on constitutional issues—"authorizes appeal of an interlocutory order that denies a motion for summary judgment so long as at least one ground is based on a free-speech claim or defense."[15] The dissenting justices noted that the courts of appeals have long been split on the matter.[16]

We granted Reyes' and the Orchestra's petitions for review.[17]

## II

The Orchestra argues that Section 51.014(a)(6) allows it to appeal the denial of its motion for summary judgment on Reyes' tortious interference claim, and that the claim should fail.

---

[12] *Id.* at ___.

[13] *Id.* at ___.

[14] *Id.* at ___ (Evans, J., dissenting from denial of en banc recons.).

[15] *Id.* at ___.

[16] *Id.* at ___.

[17] 61 Tex. Sup. Ct. J. 1828 (Aug. 31, 2018).

**A**

As the court of appeals noted, we said in *Bally Total Fitness Corp. v. Jackson* that Section 51.014 should be "strictly construed as a 'narrow exception to the general rule that only final judgments and orders are appealable.'"[18] That may have been the general rule once upon a time. Before 1979, interlocutory appeals were allowed in very few cases, only from orders appointing or refusing to vacate the appointment of a receiver or trustee, and granting or denying a temporary injunction.[19] In 1979, the Legislature added another category of orders certifying or refusing to certify a class.[20] So when Section 51.014 was first codified in 1985, it had four subsections—83 words—covering those orders.[21] Now, the statute—in four times as many words—allows interlocutory appeals in 13 broad types of cases.[22] Additionally, an interlocutory appeal can be taken

---

[18] 53 S.W.3d 352, 355 (Tex. 2001) (quoting *Montgomery Cty. v. Fuqua*, 22 S.W.3d 662, 665 (Tex. App.—Beaumont 2000, pet. denied)).

[19] *See* Act approved Mar. 30, 1917, 35th Leg., R.S., ch. 168, § 1, art. 2079a, 1917 Tex. Gen. Laws 379 (repealed 1939); Act approved Apr. 16, 1907, 30th Leg., R.S., ch. 107, § 2, 1907 Tex. Gen. Laws 206, 207 (repealed 1939).

[20] Act of May 3, 1979, 66th Leg., R.S., ch. 159, § 1, art. 2250, 1979 Tex. Gen. Laws 348 (repealed 1985).

[21] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 51.014, 1985 Tex. Gen. Laws 3242, 3280 ("A person may appeal from an interlocutory order of a district court, county court at law, or county court that: (1) appoints a receiver or trustee; (2) overrules a motion to vacate an order that appoints a receiver or trustee; (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure; or (4) grants or refuses or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65.").

[22] TEX. CIV. PRAC. & REM. CODE § 51.014(a) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that: (1) appoints a receiver or trustee; (2) overrules a motion to vacate an order that appoints a receiver or trustee; (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure; (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65; (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state; (6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73; (7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under

from any order that "involves a controlling question of law as to which there is a substantial ground for difference of opinion" if permitted by the trial court, accepted by the court of appeals, and "an immediate appeal . . . may materially advance the ultimate termination of the litigation."[23] Limiting appeals to final judgments can no longer be said to be the general rule.

Further, characterizations of textual interpretations as "strict", "liberal", "narrow", "broad", and the like are not helpful when, as is usually the case, the real goal is simply a "fair" reading of the language.[24] *Bally* can be forgiven for describing the fair construction of Section 51.014 as strict when for decades interlocutory appeals had been rare. But as the statute has expanded, a fair reading of the statute must simply give effect to all its provisions.

**B**

In construing Section 51.014(a)(6), the court of appeals stated that it would "rely in the first instance on the plain meaning of the text as expressing legislative intent."[25] But the court did not analyze the text of the provision. It immediately explained what it meant by relying on plain meaning:

---

the Family Code; (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001; (9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351; (10) grants relief sought by a motion under Section 74.351(l); (11) denies a motion to dismiss filed under Section 90.007; (12) denies a motion to dismiss filed under Section 27.003; or (13) denies a motion for summary judgment filed by an electric utility regarding liability in a suit subject to Section 75.0022.").

[23] *Id.* § 51.014(d)–(f).

[24] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 366 (2012) ("Of course, 'liberal construction' does have an identifiable meaning if it means (as we suspect it originally did mean) nothing more than rejection of 'strict construction' and insistence on fair meaning.").

[25] ___ S.W.3d ___, at ___.

The language of section 51.014(a)(6) speaks to appeals involving libel claims against media and media sources. We conclude the purpose of this section is to allow immediate appeal of claims involving free speech or press issues that are directed at the press or those the press rely upon as sources of information.[26]

But the text does not suggest that is the provision's only purpose. To determine the extent of the provision, we must look to its words.

In this case, for an interlocutory appeal under Section 51.014(a)(6), there must be:

[A]     "an . . . order . . .

[B]     that . . . denies a motion for summary judgment

[C]     that is based in whole or in part upon a claim against or defense by

[D]     [a member of the media or a person quoted],

[E]     arising under [constitutional free speech and press guarantees or Texas libel statutes]".[27]

The Orchestra qualifies under **[D]**, and its defenses to Reyes' defamation claims qualify under **[E]**. **[C]** modifies "motion" in **[B]**, not "order" in **[A]**, grammatically because "judgment" is the nearer antecedent,[28] but more importantly, because orders are not said to be based on claims and defenses, motions are.[29] The Orchestra's motion was based in part on defenses described by **[E]**. The trial

---

[26] *Id.* at ___.

[27] TEX. CIV. PRAC. & REM. CODE § 51.014(a)(6).

[28] *See Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016) (stating that "the last-antecedent canon . . . provides 'that a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied'" (quoting *Spradin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000))).

[29] *See* TEX. R. CIV. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor. . . . The judgment sought shall be rendered forthwith if . . . the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion . . . . Issues not expressly presented to the trial court by written motion . . . shall not be considered on appeal as grounds for reversal.").

court's order denied the motion in part, both as to covered defenses and noncovered defenses.

For the court of appeals and Reyes to be correct, the trial court's order must be regarded as multiple orders directed not to a single motion with multiple grounds but to multiple motions, one for each ground. In that view, there was an order denying the Orchestra's motion on conspiracy to defame, and another order denying its motion on tortious interference. This is a tortured description of the procedure, not a reasonable one. The Orchestra filed a single motion, and the trial court issued a single order. A fair reading of Section 51.014(a)(6) allows the Orchestra to appeal from the order denying the motion on its defenses to both Reyes' defamation claim and his tortious interference claim.

Most of the courts of appeals that have addressed the issue would agree.[30] The Second Court of Appeals would not. In *Astoria Industries of Iowa, Inc. v. SNF, Inc.*, that court held that Section 51.014(a)(6) does not authorize an interlocutory appeal related to nonconstitutional claims.[31] The court gave two reasons. First:

> A plain reading of this language evidences clear legislative intent that a party seeking summary judgment on claims or defenses that implicate free speech be entitled to

---

[30] *See Dolcefino v. Randolph*, 14-00-00602-CV, 2001 WL 931112, at *3 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, pet. denied); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 720–721 (Tex. App.—Austin 2001, pet. denied); *Am. Broad. Cos. v. Gill*, 6 S.W.3d 19, 26–27 (Tex. App.—San Antonio 1999, pet. denied) (stating that because the motion for summary judgment was based in part on defenses covered by Section 51.014(a)(6), "under [its] plain language . . . , the entirety of the trial court's order denying [the] motion is appealable", including defenses to the claim of tortious interference), *disapproved on other grounds*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 429 (Tex. App.—Waco 1997, writ denied) ("A plain reading of the statute shows that the appeal is from 'the order.' Thus, when section 51.014(6) applies, an order denying a motion for summary judgment is fully appealable." (citation omitted)). *See also Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d 797, 799 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("In the present case, we have jurisdiction to hear this appeal of appellee's claims of both libel and tortious interference with contract because appellants' defenses are based in whole or in part on free speech grounds.").

[31] 223 S.W.3d 616, 627–628 (Tex. App.—Fort Worth 2007, pet. denied).

appeal a trial court's denial of this relief. Nothing in the language of section 51.014(a)(6), however, suggests to us that there is a legislative intent to permit an interlocutory appeal from summary judgment rulings on non-free speech claims and defenses simply because they happen to be included in the same motion.[32]

But the court in *SNF*, like the court of appeals in this case, did not analyze the statutory text to demonstrate that it is limited to constitutional issues.[33] Second, the court noted that courts had interpreted Section 51.014(a)(5) not to extend to issues other than those specified.[34] But that provision allows an appeal from an interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity".[35] The text does not include "in whole or in part" as Section 51.014(a)(6) does. We do not suggest that the limited reading of Section 51.014(a)(5) is correct. We say only that Section 51.014(a)(6) is different.[36]

---

[32] *Id.* at 626 (footnote omitted).

[33] *See also KTRK Television, Inc. v. Fowkes*, 981 S.W.2d 779, 787 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (concluding that an appeal under Section 51.014(a)(6) extends only to "claims [that] were defended in whole or in part on free speech grounds" but included tortious interference), *disapproved on other grounds*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000).

[34] *SNF*, 223 S.W.3d at 626 (citing *Tex. State Tech. Coll. v. Cressman*, 172 S.W.3d 61, 64–65 (Tex. App.—Waco 2005, pet. denied); *City of Alamo v. Holton*, 934 S.W.2d 833, 836 (Tex. App.—Corpus Christi 1996, no writ); *Boozier v. Hambrick*, 846 S.W.2d 593, 596 (Tex. App.—Houston [1st Dist.] 1993, no writ)).

[35] TEX. CIV. PRAC. & REM. CODE § 51.014(a)(5).

[36] Likewise, courts have construed Section 51.014(a)(8), which provides for an appeal of an interlocutory order granting or denying "a plea to the jurisdiction by a governmental unit", *id.* § 51.014(a)(8), as allowing review of only the portion of an order addressing the plea to the jurisdiction. *See SNF*, 223 S.W.3d at 627; *Ware v. Miller*, 82 S.W.3d 795, 800 (Tex. App.—Amarillo 2002, pet. denied); *Montgomery Cty. v. Fuqua*, 22 S.W.3d 662, 664–665 (Tex. App.—Beaumont 2000, pet. denied); *City of El Campo v. Rubio*, 980 S.W.2d 943, 944, 949 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.). The First Court of Appeals similarly construed Section 51.014(a)(12), which provides jurisdiction over an interlocutory order denying "a motion to dismiss filed under Section 27.003", TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12), as allowing an appeal only of the portions of a trial court's order that independently satisfy the statute's requirements. *See Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 890–891 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Again, we do not approve or disapprove the holdings in these cases here. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441 (Tex. 2017) (allowing an appeal of an order covered by Section 51.014(a)(12) to extend to the denial of attorney fees). The text of Section 51.014(a)(6) is different.

11

# C

The Orchestra argues that it was entitled to summary judgment on Reyes' claim for tortious interference because there is no evidence[37] it willfully and intentionally interfered with his employment with the Bank.[38] Reyes counters that the Orchestra interfered by advising its contact at the Bank that he was no longer affiliated with the Orchestra as a volunteer and that he had emailed Martin. But there is no evidence the Orchestra told the Bank anything other than what it announced publicly in its media advisory, which was the truth: the Orchestra had disassociated itself from Reyes. Further, Reyes emailed Martin from his Bank email account, using the Bank's computer, and claiming to speak for the Bank. The Orchestra was certainly entitled to ask the Bank for clarification. There is no evidence that the Bank did not already have the means to know of the email. And there is no evidence that the Orchestra did or said anything to encourage the Bank to terminate Reyes' employment.

In *Exxon Mobil Corp. v. Rincones*, we held that a drug-testing administrator did not tortiously interfere with an employee's employment by notifying his employer that he had failed a random drug test, even though it was reasonably certain that he would be disciplined as a result.[39] The administrator did not suggest that the employer take action; it merely reported the results of the

---

[37] *See* TEX. R. CIV. P. 166a(i) ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.").

[38] *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("We have identified the elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss.").

[39] 520 S.W.3d 572, 588 (Tex. 2017).

test.[40] "No reasonable juror", we wrote, "could find that the [administrator] interfered with [the employee's] employment".[41]

Reyes' tortious interference claim here is even less compelling. There is simply no evidence whatever that the Orchestra willfully and intentionally interfered with Reyes' employment by informing the Bank that he was professing to speak on its behalf, from a Bank email account on a Bank computer, and that he was no longer associated as a volunteer with the Orchestra. The Orchestra was entitled to summary judgment on the claim.

### III

We now turn finally to Reyes' petition complaining that the court of appeals erred in holding that D Magazine was entitled to summary judgment on his claims for defamation, conspiracy to defame, and negligence, and in refusing to reverse summary judgment in favor of D Magazine on his claim of defamation per se.

The court of appeals considered every one of the 15 statements in the D Magazine article of which Reyes complained and concluded that they were either true, or rhetorical hyperbole, or subjective opinion, or otherwise nonverifiable.[42] None, the court summarized, "qualifies as a false statement of verifiable fact", and therefore none is defamatory.[43] "[S]tatements that are not verifiable

---

[40] *Id.*

[41] *Id.*

[42] ___ S.W.3d ___, at ___.

[43] *Id.* at ___.

13

as false cannot form the basis of a defamation claim."[44] Reyes disagrees with the court of appeals'

conclusion, but only for reasons the court fully considered. We need not reiterate the court's analysis

here. Having carefully reviewed it, along with Reyes' arguments, we conclude that the court reached

essentially the correct result.

Reyes argues that the court of appeals improperly "put the cart before the horse" by

analyzing the statements in the article individually before assessing whether the gist of the article

as a whole was defamatory. The court of appeals rejected the argument that the order of analysis

affected the conclusion:

> [I]f we were to address whether the gist of the Article was defamatory, and we
> accepted Reyes's own statement of the gist as accurate, we could not come to a
> different conclusion than we do after addressing each of Reyes's fifteen allegedly
> defamatory statements individually. Reyes contends that as to the issues in this
> appeal:
>
>> the "gist" of the Article was that Jose Reyes was fired as a volunteer
>> by the [Orchestra] in a very public way because he was a
>> party-crasher/trespasser, deceived people, blustered his way into
>> photographs and misrepresented his role with charities.
>
> We have addressed these allegations individually and determined they are not
> defamatory; stating them in concert does not change their meaning. Nor do we
> discern any evidence of missing or "juxtaposed" facts that would alter our analysis
> of the statements if taken together.[45]

We agree with the court of appeals that it does not matter whether the gist of the article is analyzed

before or after the individual statements, as long as it is assessed independently, which the court of

---

[44] *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22 (1990)).

[45] ___ S.W.3d at ___.

14

appeals did.

Reyes argues that the article damaged his reputation by portraying him as a trespasser, deceitful, and a fraud. With respect to portraying him as a trespasser, the court of appeals determined that Reyes' claim was for defamation per se, on which the trial court granted summary judgment for D Magazine.[46] An interlocutory order *granting* summary judgment is not subject to appeal. Reyes may yet seek review of the trial court's ruling when a final judgment is rendered. With respect to Reyes' complaints that the article portrays him as deceitful and a fraud, those broad generalizations are not supported by the individual statements that Reyes attended events uninvited, that he blustered his way into photos over others' objections, and that he misrepresented his true role in charities he supported. Those statements were facts and cannot fairly be read to suggest that Reyes was deceitful and a fraud generally. We agree with the court of appeals' conclusion that while "the Article repeated many personal criticisms of Reyes in a manner that undoubtedly hurt his feelings, . . . none of these statements can support a defamation claim against D Magazine."[47]

Finally, Reyes argues that the court of appeals erred in concluding that the Orchestra and D Magazine were entitled to summary judgment on his claim that they conspired to defame him. But the only way he alleges they did so was in the article, which we have concluded was not defamatory. Without defamation, there can be no conspiracy to defame.[48] Reyes also contends that the Orchestra conspired with the Bank to tortiously interfere with his employment. Again, we have concluded that

---

[46] *Id.* at ___.

[47] *Id.* at ___.

[48] *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (stating that "a defendant's liability for conspiracy depends on participation in some underlying tort").

15

there is no evidence the Orchestra engaged in tortious interference. There can be no conspiracy to engage in conduct that did not occur.[49] Reyes argues that the court of appeals erred in failing to distinguish his claims of negligence and gross negligence from his claims of defamation. We agree with the court of appeals that the former "are mere restatements" of the latter, and that "Reyes has not identified a fact issue on a separate, freestanding claim for negligence or gross negligence apart from his defamation claim."[50]

\* \* \* \* \*

We hold that D Magazine and the Orchestra were entitled to summary judgment on all of Reyes' claims. We affirm the judgment of the court of appeals in part, reverse in part, and remand the case to the trial court for rendition of judgment.

_____

Nathan L. Hecht
Chief Justice

Opinion Delivered: March 8, 2019

---

[49] *See id.*

[50] ___ S.W.3d at ___.