# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00631-CV

**City of Magnolia, Appellant**

**v.**

**Magnolia Bible Church; Magnolia's First Baptist Church; Believers Fellowship; and Ken Paxton, Attorney General of Texas, Appellees**

## FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
## NO. D-1-GN-18-006882, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## CONCURRING OPINION

This is an interlocutory appeal from an order granting a motion for new trial in the City of Magnolia's suit to validate an ordinance establishing a new water rate and surcharge on "Institutional/Non-Profit/Tax-Exempt" entities. The City brought the suit under the Expedited Declaratory Judgment Act (EDJA) and provided notice by publication as authorized by the EDJA. *See* Tex. Gov't Code § 1205.043 (providing for notice by publication); *see generally id.* §§ 1205.001–.152 (EDJA). Appellees Magnolia Bible Church, Magnolia's First Baptist Church, and Believers Fellowship (collectively, "the Churches") sought a new trial on the grounds that the City's newspaper notice violated the Churches' due-process rights and, alternatively, that good cause existed to vacate the final judgment under Rule 329. *See* Tex. R. Civ. P. 329 (motion for new trial after notice by publication). I concur with the Court's decision to affirm the district

court's order granting a new trial because, on this record and under the particular circumstances of this case, the notice by publication denied the Churches due process.

## BACKGROUND

In March 2018, the City adopted an ordinance relating to the City's water-system rates. *See* Magnolia, Tex., Ordinance O-2018-003 (Mar. 13, 2018).[1] Before adopting the ordinance, the City had two categories for water users—residential and commercial—and the Churches were considered commercial. The ordinance created a new category of water user, the "Institutional/Non-Profit/Tax-Exempt accounts," which was made up of "schools," "churches," certain governmental facilities, and "parks." *See id.* The users in this new category would pay a 50% surcharge to the in-city water rate and other fees. *See id.*

The Churches opposed the new category and surcharge.[2] In July 2018, the Churches sent a letter to the City complaining that the "Institutional/Non-Profit/Tax-Exempt" rate class was discriminatory and stating their intent to "pursue remedy of this wrongful and unequitable policy through available legal recourse and actively seek legislation to reverse this and avoid other cities following suit." Thereafter, a representative of the Churches attended a September 2018 City Council meeting to reiterate their concern with the ordinance and to emphasize that they would bring legal action if it was not reversed.

Based in part on this opposition, the City filed suit in Travis County District Court in November 2018 under the EDJA for declaratory judgment regarding the legality and validity

---

[1] This ordinance was amended twice. *See* Magnolia, Tex., Ordinance O-2018-015 (Sep. 11, 2018); *id.* O-2018-009 (Aug. 14, 2018) (lowering base rates for "Institutional/Non-Profit/Tax-Exempt" entities as compared to the March ordinance, but leaving overall features, including the surcharge, same).

[2] Magnolia Independent School District also opposed the surcharge but did not participate in this appeal or the underlying proceedings.

of the surcharge on the newly created rate category. *See* Tex. Gov't Code. §1205.021(2). The petition explained that the "Rate and Surcharge are being challenged by customers of the City." The City published notice of the suit in the *Austin American-Statesman* and the *Houston Chronicle* on November 21 and November 28, 2018, as required by the EDJA. *See id.* § 1205.043. The City did not directly notify the Churches of the EDJA suit.

In December 2018, a month after the Travis County suit was filed, the Churches sent another letter to the City complaining that the new institutional water rate violated the Texas Constitution, the Tax Code, and the Texas Religious Freedom Restoration Act (TRFRA), Tex. Civ. Prac. & Rem. Code §§ 110.001–.012, and that the rates were arbitrary and discriminatory. The letter threatened legal action if the City failed to repeal the new water rates. The letter did not reference the City's EJDA action.

The City amended its Travis County EDJA petition in January 2019 and republished notice of the suit in the *Austin American Statesman* and the *Houston Chronicle* on January 16 and January 23, 2019. *See* Tex. Gov't Code § 1205.043. Again, the City did not directly notify the Churches about the suit, and the Churches never made an appearance in the action. The Attorney General, who is required to be notified in an EDJA action, *see id.* § 1205.042, appeared at the bond-validation hearing but raised no objections to the City's rate, explaining that his office had "worked very closely with [the City's] counsel" to provide guidance and that if his office knew of any people "who object or have concerns, [it would] work with them." Ultimately, the Travis County District Court validated the bonds on February 7, 2019, stating: "The Revenues pledged to secure the Bonds are legal and valid, including specifically the Rate and Surcharge"; "The imposition of the Rate is legal and valid"; "The imposition of the Surcharge is legal and valid"; and "The Bonds are legal and valid."

3

The Churches did not initially file suit as threatened in their letter. Instead, they sought recourse through the legislative process, championing two companion bills that did not pass during the 86th legislative session. *See* Tex. S.B. 2322, 86th Leg., R.S. (2019) (proposing a bill "relating to rates established by municipalities for water and sewer services."); Tex. H.B. 4114, 86th Leg., R.S. (2019)(same).

After failing to obtain legislative relief, the Churches sued the City in May 2019 in Montgomery County District Court, seeking declaratory judgment under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, that the institutional water rate is void because it is a tax on a tax-exempt entity; is a discriminatory, arbitrary rate; and is a substantial burden on the Churches' free exercise of religion in violation of TRFRA. In response, the City sent the Churches a letter informing them of the final judgment in the EDJA suit and threatening to seek to have the Churches held in contempt if they did not dismiss the Montgomery County suit. The Churches in turn filed a motion for new trial in the EDJA suit, asserting that the City's notice by publication violated their right to due process under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950), because they had no actual notice of the pending EDJA suit and because the City arguably had notice of their intentions to seek legal recourse. The Churches filed their motion under Texas Rule of Civil Procedure 329, which allows a motion for new trial, filed within two years of judgment, in cases where judgment was rendered on service of process by publication. *See* Tex. R. Civ. P. 329 (authorizing grant of new trial upon showing of good cause). The City opposed the motion, observing that the bonds had already been issued bearing the statement that they were "validated and confirmed by a judgment" that "perpetually enjoins the commencement of any suit [challenging] the provision made for the payment of the principal and interest." The City also

4

challenged the district court's jurisdiction, arguing that the time limitations for filing a motion for new trial under Rule 329 do not apply to EDJA cases because Rule 329 conflicts with "the provisions for speedy resolution set forth in the EDJA"; the district court lost plenary power over the suit such that the Churches cannot be granted "named party" status in the EDJA suit and thus lacked standing to seek a new trial; and in the alternative, the Churches had no legitimate due-process claim because the suit did not adjudicate their private rights and they were not entitled to special notice. The Attorney General issued a statement supporting the Churches' motion for new trial, asserting that judgments under the EDJA, while intended to be "binding and conclusive," are nonetheless subject to the Texas Constitution and TRFRA, which "override other statutes to protect religious freedom." Based on the "incredibly unique and troubling facts" of the case, the Attorney General explained that due process required the City to have provided the Churches with actual notice of the EDJA suit. After a hearing, the district court granted the motion for new trial on the ground that failure to provide the Churches with individual notice of the EDJA suit deprived them of due process and, alternatively, that the Churches are entitled to a new trial under Rule 329. This interlocutory appeal ensued.[3]

---

[3] The City appeals under section 51.014(a)(8) of the Civil Practice and Remedies Code because the district court, by granting a new trial, implicitly rejected the City's arguments challenging the court's subject-matter jurisdiction, thus denying what was substantively a plea to the jurisdiction. *See City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (treating jurisdiction-based motion for summary judgment as a plea to the jurisdiction for interlocutory-appeal purposes because "'plea to the jurisdiction' [does] not [have] to refer to a 'particular procedural vehicle,' but rather to the substance of the issue raised"). The scope of our appeal is "the order" denying the plea to the jurisdiction, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), which in this case is an order granting a motion for new trial, *see* *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 760 (Tex. 2019) (defining scope of interlocutory appeal to encompass the contents of "the order" being appealed).

**DISCUSSION**

On appeal, the City argues that the district court lacked subject-matter jurisdiction to grant a new trial because the district court's plenary power had expired thirty days after its final judgment. More specifically, the City contends that the Churches' filing of a motion for new trial under rule 329—allowing a motion for new trial within two years after a judgment following citation by publication, *see* Tex. R. Civ. P. 329(a)—did not extend the district court's plenary power because the EDJA scheme for expedited disposal of cases bars application of Rule 329. Further, the City continues, the Churches do not have a meritorious due-process complaint that would give the district court jurisdiction to vacate its judgment because the EDJA adjudicates public rights rather than private rights and because notice by publication is constitutional as to public rights. Finally, the City argues that even if the Churches' have a meritorious due-process complaint, the Churches should have filed a bill of review and that we cannot treat their motion for new trial as a bill of review. *See, e.g.*, *Sweetwater Austin Props., L.L.C. v. SOS All., Inc.*, 299 S.W.3d 879, 890 (Tex. App.—Austin 2009, pet. denied) ("A bill of review is an equitable proceeding brought to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal."). The Churches argue that it was proper for the district court to grant a new trial because their due-process rights were violated by the publication notice and, in the alternative, because "good cause" existed under Rule 329. Because it is key to resolving all the issues in this appeal, I begin by addressing the Churches' due-process claim.

"'The fundamental requisite of due process of law is the opportunity to be heard.' This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339

6

U.S. at 314 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).  Due process does not require personal service in all circumstances, but any use of substituted notice in place of personal notice—e.g., notice by publication—must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*  However, "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962) (citing *Mullane*, 339 U.S. at 318).

The EDJA empowers an issuer of public securities to seek an expedited declaratory judgment concerning "the legality and validity of each public security authorization relating to the public securities," including, as relevant here, the legality and validity of "the imposition of a rate, fee, charge, or toll."  Tex. Gov't Code § 1205.021(2)(E).  The EDJA requires notice by publication to "interested parties," defined to include all taxpayers and ratepayers within the issuer's jurisdiction. *See id*. §§ 1205.041(a), .043.  And the EDJA provides that a final judgment with respect to the public securities is "binding and conclusive" against all "interested parties," regardless of whether they chose to appear or were deemed served by publication notice. *Id*. § 1205.151.

Ordinarily, notice by publication satisfies due process as to the parties bound by an EDJA judgment because the EDJA permits only *in rem* declarations concerning property rights—i.e., that adjudicate a public entity's right to identified property—it does not allow declarations concerning *in personam* rights and liabilities. *See City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 454–55 & n. 15 (Tex. 2020) (declining to address due-process challenge to EDJA notice requirement because EDJA does not allow declarations concerning *in*

7

*personam* rights and liabilities). Likewise, and relatedly, the usual challenges to public-security authorizations involve public rights—i.e., those brought by a "taxpayer . . . using that status to entitle him to complain about an alleged misuse of public funds or about other public action that has only an indirect impact on his interests." *Richards v. Jefferson County*, 517 U.S. 793, 803 (1996) (internal citations omitted) (distinguishing between public and private actions and noting that states have wide latitude to establish procedures that limit these types of challenges).

Here, however, the Churches seek to challenge the legality and validity of the City's institutional rate on the grounds that it "is a tailored, discriminatory rate as applied to them [because] it violates their personal tax-exempt status and . . . it infringes their exercise of religious freedom." These type of claims—i.e., constitutional challenges to the City's attempt to levy personal funds—fall under the rubric of private actions. *See id.* ("By virtue of presenting a federal constitutional challenge to a State's attempt to levy personal funds, petitioners clearly bring a[ private] action . . . ."). And if allowed to stand, the challenged EDJA judgment—which declares, among other matters, that "the [City's] imposition of the [institutional] Rate is legal and valid"—has the effect of extinguishing the Churches' private claims. Accordingly, it must be determined whether due process required that the City give actual notice to the Churches of the EDJA proceeding or whether notice by publication satisfied due process. *See Schroeder*, 371 U.S. at 212–13 (noting that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceeding in question) (quoting *Mullane*, 339 U.S. at 318)); *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (engaging in *Mullane* analysis to determine whether notice by publication was sufficient in parental-termination suit).

8

Under the particular and unique circumstances of this case, notice by publication did not satisfy the Churches' right to due process. Before the City filed its EDJA suit in Travis County District Court, the Churches sent a letter to the City listing the Churches and their pastors by name and stating their intent to litigate if the City refused to withdraw the institutional rate. Further, the City had access to the Churches' addresses through its billing system. *See Mullane*, 339 U.S. at 318 (noting that trustee "ha[d] on its books the names and addresses" of the interest parties); *In re E.R.*, 385 S.W.3d at 565 (relying on fact that State knew mother's identity and was in contact with her to hold that notice by publication was constitutionally insufficient).

Additionally, after the City filed its original EDJA petition, but before it published notice a second time, the Churches sent another letter to the City explaining their position that the institutional rate violated their rights to religious liberty under TRFRA. Thus, the City knew the identity of the Churches and that they were interested in litigating the validity of the institutional rate on constitutional grounds—i.e., in a private action—but did not take any action to directly provide notice or serve the Churches of the EDJA suit filed in Travis County District Court. *See Mullane*, 339 U.S. at 318 ("Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."); *In re E.R.*, 385 S.W.3d at 560 ("From these decisions, we can distill a common principle: when a defendant's identity is known, service by publication is generally inadequate.") (referencing *Mullane*, 339 U.S. at 314, 319 and other Supreme Court cases, and citing 1 *Restatement (Second) of Judgments* § 2, reporter's note cmt. a (1982)). Accordingly, citation by publication was not proper as to the Churches. *See Schroeder*, 371 U.S. at 212–13 ("The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very

9

easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.").

Because notice to the Churches was constitutionally insufficient, the resulting judgment was void and can be challenged at any time. *See In re E.R.*, 385 S.W.3d at 566 ("A complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time.") (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491 (1988)). As such and because there is no dispute that the Churches acted promptly in seeking relief—they filed their motion for new trial in the underlying suit sixteen days after the City notified them of the EDJA judgment—the district court did not err in granting a new trial. *See id.* at 569–70 (holding that because notice by publication deprived mother of due process in parental-termination suit, she was entitled to new trial unless, on remand, it was determined that she delayed in seeking relief after learning of the judgment against her and that granting relief would impair another party's substantial reliance on judgment).

Relying primarily on sections 1205.002 and 1205.068 of the EDJA, the City argues that the EDJA's "plain language preempt[s] any mechanism that would slow down or interfere with an expedited final adjudication," including granting a new trial under Rule 329. *See* Tex. Gov't Code §§ 1205.002(a) ("To the extent of conflict or inconsistency between [the EDJA] and another law, th[e EDJA] controls."), 1205.068(c) ("An order or judgment from which an appeal is not taken is final."); *see also* Tex. R. Civ. P. 329(a) (allowing motion for new trial on judgment following citation by publication and authorizing new trial upon showing of good cause filed within two years of judgment); *Cities of Conroe, Magnolia, & Splendora v. Paxton*, 559 S.W.3d 656, 664 (Tex. App.—Austin 2018) (describing EDJA generally, including notice

10

procedures, and noting EDJA's "extraordinarily expedited process"), *reversed in part on other grounds by City of Conroe*, 602 S.W.3d 444 (Tex. 2020). More specifically, the City argues that Rule 329 does not apply to EDJA final judgments because it would impermissibly "render a final judgment in an EDJA suit anything *other* than final, binding, and conclusive," and is therefore "preempted." The essence of this argument is that EDJA final judgments cannot be subject to direct or collateral attacks. But even if the City's construction of section 1205.068(c) is correct, the Texas Supreme Court has made it clear that due process prevails over a state statute that restricts the time for challenging a judgment. *See In re E.R.*, 385 S.W.3d at 561–62 (citing *Tulsa Prof'l*, 485 U.S. at 490). In *In re E.R.*, the high court considered the following Family Code provision that imposed a six-month time limit on direct or collateral attacks to parental-termination judgments following citation by publication: "Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed." Tex. Fam. Code § 161.211(b); *see In re E.R.*, 385 S.W.3d at 557–67. After concluding that service by publication was constitutionally inadequate under the circumstances, the court held that the bar in section 161.211 "applies only to parents for whom service by publication was valid" because "complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction" and that "the resulting judgment is void and may be challenged at any time." *Id.* at 566–67. Based on this holding, the Churches here are likewise entitled to challenge the EDJA judgment despite any provisions in the EDJA to the contrary because notice by publication deprived them of due process. *See id.*

That same failure of due process eliminates the need to determine whether Rule 329 applies to EDJA judgments generally or, more specifically, whether the district court here

11

retained plenary jurisdiction to grant a new trial under Rule 329.  First, as noted, judgments void for denial of due process may be challenged "at any time."  *Id.* at 563 (considering invalid notice in Rule 329 context); *see Caldwell v. Barnes*, 154 S.W.3d 93, 96–97 (Tex. 2004) (considering invalid notice in bill-of-review context).  Further, the remedy for denial of due process is due process.  *See Mosley v. Texas Health & Human Servs. Comm'n*, 593 S.W.3d 250, 268 (Tex. 2019) (holding that because denial of due process prevented party from filing motion for rehearing, remedy was to remand for opportunity to file motion for rehearing); *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995) (holding that upon proof of protected interest, professor whose contract was not renewed is not entitled to reinstatement but to hearing comporting with due process (citing *Perry v. Sindermann*, 408 U.S. 593, 603 (1972))); *McIntire v. State*, 698 S.W.2d 652, 661–62 (Tex. Crim. App. 1985) (remedy for failure to grant hearing on motion for new trial is a hearing)).  Invalid service prevents a party from participating in a trial on the merits, and the remedy for that denial of due process is a new trial.  *See In re E.R.*, 385 S.W.3d at 563 (approving of Rule 329 motion for new trial despite statute explicitly displacing Rule 329 because service was invalid).  Here, because the invalid service denied the Churches the opportunity to challenge the legality and validity of the institutional rate at the EDJA trial, the underlying EDJA judgment is void and the Churches are entitled to a new trial.  Accordingly, I concur with the Court's decision to affirm the district court's order granting a new trial.

_____
Jeff Rose, Chief Justice

12

Before Chief Justice Rose, Justices Baker and Triana

Filed:   December 18, 2020